```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE


FESNAK AND ASSOCIATES, LLP,     :
                                :
              Plaintiff,        :
                                :
         v.                     :    C.A. No. 09-680-JJF
                                :
U.S. BANK NATIONAL              :
ASSOCIATION, and CITIBANK,      :
N.A.,                           :
                                :
              Defendants.       :
```

James A. Keller, Esquire of SAUL EWING, Philadelphia,
Pennsylvania.
Whitney W. Deeney, Esquire of SAUL EWING LLP, Wilmington,
Delaware.

Attorneys for Plaintiff.

Kathleen M. LaManna, Esquire, and Eric S. Goldstein, Esquire of
SHIPMAN & GOODWIN LLP, Hartford, Connecticut.
Charlene Davis, Esquire, and Justin R. Alberto, Esquire of
BAYARD, P.A., Wilmington, Delaware.

Attorney for Defendant U.S. Bank National Association.

Christopher H. McGrath, Esquire, and Colleen E. Huschke, Esquire
of PAUL, HASTINGS, JANOFSKY & WALKER, San Diego, California.
Philip Trainer, Jr., Esquire, and Toni-Ann Platia, Esquire of
ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Defendant Citibank, N.A.

---

**MEMORANDUM OPINION**

July __9__ , 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are the following Motions filed
by Plaintiff Fesnak and Associates, LLP: (1) Motion To Strike The
Third, Eighth and Ninth Affirmative Defenses Asserted In
Defendant Citibank, N.A.'s Answer (D.I. 14); (2) Motion For
Summary Judgment On Count II (D.I. 17); and (3) Motion For
Protective Order And To Stay All Discovery Pending Disposition Of
Its Motion For Summary Judgment (D.I. 39). For the reasons
discussed, the Motion To Strike will be granted in part and
denied in part, the Motion For Summary Judgment will be denied,
and the Motion For Protective Order And To Stay will be denied as
moot.

## I.   **Background**

Plaintiff Fesnak and Associates, LLP ("Fesnak") initiated
the present action against Defendants U.S. Bank National
Association ("U.S. Bank") and Citibank, N.A. ("Citibank") on
September 14, 2009. (D.I. 1.) Plaintiff seeks an injunction
compelling specific performance of U.S. Bank's obligations under
an Escrow Agreement (the "Escrow Agreement"). (Id. ¶ 1.)
Alternatively, Fesnak seeks a declaratory judgment that Citibank
has no valid claims against funds being held in escrow (the
"Escrowed Funds") by U.S. Bank pursuant to the Escrow Agreement.
(Id. ¶ 2.)

The parties' dispute stems from a Merger Agreement which was
entered into on October 18, 2007 by Citibank, Penelope

Acquisition Sub, Inc. (a Citibank entity), PayQuik.com, and Fesnak, the Stockholders' Representative for PayQuik.com. (Id. ¶ 14; Ex. 2, Merger Agreement.) The Merger Agreement provided that Citibank would acquire PayQuik.com for approximately 40 million dollars and that ten percent was to be held in escrow. (Id. ¶ 17; Ex. 3, Schedule 2.2 to Merger Agreement.) Accordingly, Citibank, Fesnak (as Stockholders' Representative) and U.S. Bank (as Escrow Agent) entered into the Escrow Agreement on January 9, 2008. (Id. ¶¶ 15-18.)

Pursuant to the Merger Agreement, the stockholders agreed to indemnify Citibank from the Escrowed Funds for certain breaches of the Merger Agreement if Citibank made a timely, valid claim for indemnification. (Id. ¶¶ 22-24.) Fesnak alleges that Citibank failed to give its written indemnity notice (the "Indemnity Notice") by 11:59 PM Eastern Standard Time ("EST") on July 9, 2009, the notice deadline provided in the Escrow Agreement. (Id. ¶¶ 26-27, 35.) Specifically, Fesnak alleges that Citibank gave the Indemnity Notice via facsimile at 10:21 PM EST on July 9, 2009, but that the notice was deemed to be given on July 10, 2009 because it was sent after the close of normal business hours. (Id. ¶¶ 31-33.) By letter dated August 6, 2009, Fesnak instructed U.S. Bank to distribute the Escrowed Funds as provided for by Section 4(d) of the Escrow Agreement because Citibank had purportedly failed to make any valid claims against

2

the Escrowed Funds.  (Id. ¶¶ 36, 38, 40.)  U.S. Bank has
acknowledged that a dispute exists between Fesnak and Citibank
over whether timely notice was given under the terms of the
Escrow Agreement, and has refused to release the Escrowed Funds.[1]
(Id. ¶ 45; Exs. 5 and 6.)

## II.  Motion For Summary Judgment On Count II (D.I. 17)

### A.   Parties' Contentions

Fesnak contends that it is entitled to summary judgment on
Count II because no genuine issues of material fact exist as to
the deadline or process for giving the Indemnity Notice under the
Escrow Agreement.  (D.I. 18, at 8.)  Fesnak argues that Section
8(a) of the Escrow Agreement unambiguously provides that if the
Indemnity Notice was made by facsimile and not transmitted during
normal business hours, then it was deemed to be given on the next
business day.  (Id. at 9.)  According to Fesnak, Section 4(b)
sets forth the deadline for the Indemnity Notice to be given and
is consistent with Section 8(a), which provides the methods of

---

[1] U.S. Bank bases its refusal to distribute the Escrowed
Funds on Section 7(d) of the Escrow Agreement, which states:
"[i]n the event that the Escrow Agent shall be uncertain as to
its duties or rights hereunder or shall receive instructions,
claims or demands from any party hereto which, in its reasonable
opinion, conflict with any of the provisions of this Agreement,
it shall be entitled to refrain from taking any action and its
sole obligation shall be to keep safely all property held under
the terms of this Agreement until it shall be directed otherwise
in writing by all of the parties hereto or by a final order or
judgment of a court of competent jurisdiction."  (D.I. 1, Exs. 1
and 6)

3

delivery and the time when notice through each delivery method is deemed given. (Id.) Further, Fesnak contends that interpreting the Escrow Agreement to mean that the Indemnity Notice was given at 10:21 PM (i.e., the time when it was sent via facsimile) would render Section 8(a) meaningless. (Id. at 10.) Thus, under Fesnak's interpretation, the Indemnity Notice was sent on the night of July 9, 2009, but was deemed given on July 10, 2009, after Citibank's right to indemnification terminated. (Id.)

Citibank opposes summary judgment as premature under Rule 56 of the Federal Rules of Civil Procedure and the Court's January 8, 2010 Scheduling Order, and contends that this Motion can be denied solely on these grounds. (D.I. 27, at 1.) Citibank also opposes summary judgment on the merits, and contends that the Indemnity Notice was timely under the unambiguous terms of the Escrow Agreement. (Id. at 2.) Citibank argues that the Merger and Escrow Agreements both expressly allow for the Indemnity Notice to be submitted until 11:59 PM EST on July 9, 2009. (Id. at 8-9.) Further, Citibank contends that its interpretation does not ignore Section 8(a), but rather, falls in line with the explicit carve-out in the introductory clause of Section 8(a), which states, "unless expressly specified otherwise herein..." (Id. at 10-11.) Therefore, the specific terms of Section 4(b) are consistent with Section 8(a)'s carve-out, according to Citibank. (Id. at 11.) In addition, Citibank contends that applying

4

Section 8(a)'s general notice provision to Section 4(b)'s more specific provision governing the Indemnity Notice, as Fesnak advocates, would render numerous provisions of the Merger and Escrow Agreements meaningless. (Id. at 12-13.)

Fesnak replies that Sections 4(b) and 8(a) complement each other and must be read together, as Section 4(b) lacks the necessary direction of how the notice must be delivered. (D.I. 30, at 5.) Fesnak further contends that there is no conflict between the plain language of the Merger and Escrow Agreements. (Id. at 6-8.) In turn, Citibank contends that Fesnak improperly reserved this argument for its Reply Brief in violation of Local Rule 7.1.3(c)(2). (D.I. 34.)

B. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," then the court should grant summary judgment. Fed. R. Civ. P. 56(c). When considering whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-movant, and resolve all reasonable inferences in the non-movant's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, a court should not make credibility determinations or weigh the

evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person would conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

The movant bears the burden of proving the absence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). Once the movant offers such proof, the non-movant "must come forward with 'specific facts showing [a] genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the non-movant will not be sufficient to survive a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, in ruling on a summary judgment motion, the court must perform the "threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

C. Discussion

As an initial matter, the Court concludes that Fesnak did

6

not improperly reserve material for its Reply Brief which should have been included in its Opening Brief. Further, the Court rejects Citibank's contention that Fesnak's Motion For Summary Judgment should be denied solely because it is premature under the January 8, 2010 Scheduling Order.[2]

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party may move for summary judgment at any time until 30 days after the close of all discovery, "unless a different time is set by local rule or the court order otherwise." Fed. R. Civ. P. 56(c)(1). "Pursuant to Federal Rule of Civil Procedure 16(c), the Court has broad discretion to take appropriate action to identify the litigable issues so as to simplify an action for trial and promote efficiency and the conservation of judicial resources." In re Intel Corp. Microprocessor Antitrust Litig., MDL No. 05-1717-JJF, 2009 WL 1885666, at *1 (D. Del. June 25, 2009)(citing Fed. R. Civ. P. 16(c)). "[T]his authority includes the ability to adjudicate disputed legal issues early in the litigation." Id.

Under Delaware law, the interpretation of contract language is a question of law. O'Brien v. Progressive N. Ins. Co., 2000 WL 33113833, at *4 (Del. Super. Ct. Dec. 18, 2000) (citing Rhone-

---

[2] The January 8, 2010 Scheduling Order provides that no case dispositive motion may be filed more than 10 days prior to July 5, 2010 without leave of the Court. (D.I. 24.) However, Fesnak's Motion For Summary Judgment was filed on December 10, 2009, prior to the entry of the Scheduling Order.

Polenc Basis Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992)). The use of extrinsic evidence to interpret "clear and unambiguous language" in a contract is not permitted. E.I. du Pont de Nemours & Co. v. Admiral Ins. Co., 711 A.2d 45, 56 (Del. Super. Ct. 1995). A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rhone-Poulenc, 616 A.2d at 1196. Moreover, "[c]ourts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." Id. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. Id.

Where contract language is unambiguous, the court must give the provision's terms their plain meaning. Admiral Ins. Co., 711 A.2d at 57. Additionally, unambiguous contract language must be construed in accordance with how it would be understood by "an objective reasonable third party." Sanders v. Wang, No. 16640, 1999 WL 1044880, at *6 (Del. Ch. Nov. 8, 1999)(citations omitted). In Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001 (3d Cir. 1980), the Third Circuit held that ambiguities in a contract are questions of fact, and thus, inappropriate for resolution at the summary judgment stage. See id. at 1011.

In relevant part, the Escrow Agreement provides:

4. <u>Transfers from the Escrow Funds</u>
    (b) **Buyers may, by giving written notice** (an
"<u>Indemnity Notice</u>") to the Stockholders' Representative and
the Escrow Agent, **make a claim against the Escrow Funds** for
any amounts claimed by it under Article XI of the Merger
Agreement ("<u>Claimed Amounts</u>"), **at any time prior to 11:59pm
New York time on the 18-month anniversary of the date of
this Agreement** (the "<u>Termination Date</u>").

\* \* \*

8. <u>Notices; Incumbency</u>
(a) **Unless expressly specified otherwise herein, all
notices** or other communications required or permitted
hereunder **shall be in writing and shall be deemed given:** (I)
on the date established by the sender as having been
delivered personally, (ii) on the date delivered by a
private courier, **(iii) on the date sent by facsimile (with a
.pdf or other copy by electronic mail), with confirmation of
transmission, if sent during normal business hours of the
recipient, if not, then on the next business day,** or (iv) on
the fifth business day after the date mailed, by certified
or registered mail, return receipt requested, postage
prepaid.

(D.I. 18, Ex. 2 ¶¶ 4, 8 (emphasis added).) The parties agree on

several pertinent points. Both agree that the Termination Date

for indemnification claims to be brought was July 9, 2009 at

11:59 PM EST. (<u>See</u> D.I. 18, at 5; D.I. 27, at 4.) Further, it

is undisputed that the Indemnity Notice was faxed to Fesnak at

approximately 10:21 PM EST on July 9, 2009 (after the close of

normal business hours but before 11:59 PM.) (D.I. 18, at 6; D.I.

27, at 5.) Besides its timeliness, Fesnak apparently does not

challenge the sufficiency of the notice in any other respect.

    At this time, the Court cannot conclude that Fesnak is

entitled to summary judgment. The Court recognizes the tension

between Sections 4(b) and 8(a) of the Escrow Agreement, but is

not prepared to resolve the issue strictly on legal grounds.  The

instant Motion comes before the Court with a limited record, as

it was filed prior to the entrance of the Scheduling Order.

Moreover, Citibank raises arguments in its Answers to the instant

Motion and Motion To Strike that any failure to send the

Indemnity Notice during normal business hours is excused and/or

justified because Fesnak was aware that the Indemnity Notice was

going to be sent prior to 11:59 PM on July 9, 2009, and did not

object.  (See D.I. 19, at 10; D.I. 27, at 4.)  In view of these

circumstances, the Court is persuaded that further development of

the record is necessary.  Thus, while the Court does not

foreclose the possibility that Fesnak will be entitled to summary

judgment, such a determination is not appropriate at this

juncture.[3]

### III. **Motion To Strike The Third, Eighth and Ninth Affirmative Defenses Asserted In Defendant Citibank, N.A.'s Answer (D.I. 14)**

A.  Legal Standard

Pursuant to Rule 12(f), "[t]he court may strike from a

pleading any insufficient defense or any redundant, immaterial,

---

[3] On July 2, 2010, Fesnak filed a Restated Motion For
Summary Judgment On Count II.  (D.I. 47.)  Fesnak does not make
any new contentions or cite any additional facts, but rather,
"moves for all of the reasons set forth in its original Motion."
(Id.)  For this reason, the Court will also deny Fesnak's
Restated Motion.

impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As a general matter, motions to strike under Rule 12(f) are disfavored. Seidel v. Lee, 954 F. Supp. 810, 812 (D. Del. 1996). "[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotations omitted). Moreover, when ruling on a motion to strike, "the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law." Procter & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988) (citations omitted). A court should not strike a defense unless the insufficiency is "clearly apparent." Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986), rev'd in part on other grounds, 505 U.S. 504 (1992) (citations omitted); see also Symbol Techs, 609 F. Supp. 2d at 356 n.1 (noting criticism of motions to strike for insufficiency because determination of disputed legal questions should be made after discovery and a hearing on the merits). However, "a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses." Sun Microsystems, Inc. v. Versata Enters., Inc., 630 F. Supp. 2d 395, 408 (D. Del. 2009)(internal quotations

omitted).

B. Discussion

By its Motion, Fesnak contends that the Court should strike Citibank's Third, Eighth, and Ninth Affirmative Defenses. (D.I. 15.) Each affirmative defense will be examined in turn.

1. *Citibank's Third Affirmative Defense*

As its Third Affirmative Defense, Citibank alleges that Fesnak lacks standing to brings its claims, and accordingly, Fesnak's claims are barred in whole or in part. (D.I. 9 ¶ 3.) Fesnak contends that this affirmative defense should be stricken because there is no basis for Citibank to argue that Fesnak lacks standing, and that this affirmative defense is conclusory and insufficient as a matter of law. (D.I. 15, at 4.) Further, Fesnak contends that Citibank has failed to adequately identify Fesnak's alleged lack of standing, and that Citibank has actually admitted that Fesnak does have standing to bring its claims. (Id. at 4-5.) Citibank responds that it only admitted that Fesnak was appointed by the Merger Agreement to serve as Stockholder Representative for litigation-related matters regarding the Merger Agreement, and that this was not an admission of standing. (D.I. 19, at 9.)

Upon review of Citibank's Answer (D.I. 9), the Court is not persuaded that Citibank admitted that Fesnak has standing to bring this action. Moreover, standing is always required for any

12

action in federal court, Huertas v. City of Camden, C.A. No. 05-5375(JBS), 2007 WL 542383, at *4 (D.N.J. Feb. 14, 2007), and the Court is not persuaded that Fesnak will suffer any prejudice by the assertion of this affirmative defense. Accordingly, the Court will deny Fesnak's Motion To Strike with regard to the affirmative defense of standing.

        2.   Citibank's Eighth Affirmative Defense

        As its Eighth Affirmative Defense, Citibank alleges that any act or conduct alleged to have been committed by Citibank or U.S. Bank was justified under the Merger Agreement.  (D.I. 9, ¶ 8.) Fesnak contends that this affirmative defense should be stricken because justification is not generally recognized as an affirmative defense in Delaware.  (D.I. 15, at 5.)  Further, Fesnak contends that Citibank has plead its justification defense in a bare bones manner, and that Fesnak is at risk of surprise and undue prejudice if this defense is not stricken.  (Id. at 6.)

        Citibank responds that Fesnak has not pointed to any case law casting doubt upon the ability to raise justification as an affirmative defense.  (D.I. 19, at 8.)  Further, Citibank contends that it has adequately plead its justification defense, that there is no risk of surprise or undue prejudice to Fesnak, and that striking the justification defense would amount to an evaluation on the merits, which is inappropriate before discovery has been completed.  (Id. at 4-6.)

13

Under Delaware law, justification is "a defense when the conduct in question is necessary as an emergency measure to avoid imminent public or private injury which is about to occur by reason of the situation occasioned or developed through no fault of the defendant." Bell v. Shahan, Civ. A. 93A-07-02, 1994 WL 889592, at *1 (Del. Super. Feb. 15, 1994). While it is unclear that a justification defense can even be raised in a contractual dispute, the Court concludes that this defense must be stricken on the grounds that it is merely a bare bones, conclusory allegation. Citibank has not plead sufficient facts on which Fesnak could be put on notice of the nature of the justification defense being raised against it. However, the Court will allow Citibank leave to amend its pleading to remedy the aforementioned deficiency.

### 3. Citibank's Ninth Affirmative Defense

As its Ninth Affirmative Defense, Citibank alleges that the entirety of Fesnak's Complaint is barred by the doctrine of excuse. (D.I. 9 ¶ 9.) Fesnak contends that this affirmative defense should be stricken because excuse is not recognized as an affirmative defense in Delaware. (D.I. 15, at 6.) Further, Fesnak contends that Citibank has inadequately plead its excuse defense, and that Fesnak is at risk of surprise and undue prejudice if this defense is not stricken. (Id.)

Citibank responds that excuse is recognized as an

14

affirmative defense in Delaware, and that Delaware courts have allowed excuse defenses in various circumstances, particularly when the other party to a contract is alleged to be in material breach of the contract. (D.I. 19, at 7.) Additionally, Fesnak contends that it has adequately pled its excuse defense, that there is no risk of surprise or undue prejudice to Fesnak, and that it would amount to an evaluation on the merits, which is inappropriate before discovery has been completed. (Id. at 4-6.)

Under Delaware law, "a valid contract will be enforced unless the contract violates public policy or positive law, or unless a party's non-performance is excused." In re Appraisal of Metromedia Int'l Group, Inc., 971 A.2d 893, 900 (Del. Ch. 2009). Citibank's allegations with regard to this defense amount to nothing more than the averment that the Complaint is barred by the doctrine of excuse. In the Court's view, this is a bare bones, conclusory allegation. Citibank's pleading fails to give Fesnak any notice of the nature of this defense or the basis on which Citibank claims that its and/or U.S. Bank's non-performance is excused. The Court will allow Citibank leave to amend its pleading to remedy the deficiency.

**IV.  Motion For Protective Order And To Stay All Discovery
     Pending Disposition Of Its Motion For Summary Judgment (D.I.
     39)**

By its Motion, Fesnak seeks an Order staying all discovery
until its Motion For Summary Judgment is resolved.  (D.I. 39, at
2.)  In light of the Court's disposition of Fesnak's Motion For
Summary Judgment, this Motion will be denied as moot.

**V.  Conclusion**

For the reasons discussed, Plaintiff Fesnak and Associates,
LLP's Motion To Strike The Third, Eighth and Ninth Affirmative
Defenses Asserted In Defendant Citibank, N.A.'s Answer will be
granted in part and denied in part.  Its Motion For Summary
Judgment On Count II will be denied, and its Motion For
Protective Order And To Stay All Discovery Pending Disposition Of
Its Motion For Summary Judgment will be denied as moot.

An appropriate Order will be entered.

16